**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2085**

RICARDO FLOREZ; ELIZABETH PAGANO,

        Plaintiffs - Appellants,

     v.

FREEDOM MORTGAGE CORPORATION,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge.  (5:18-cv-00022-BO)

Submitted:  August 12, 2019             Decided:  September 3, 2019

Before MOTZ, DIAZ, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Aaron C. Hemmings, HEMMINGS & STEVENS, P.L.L.C., Raleigh, North Carolina; Kenneth Jay Grunfeld, GOLOMB & HONIK, P.C., Philadelphia, Pennsylvania; Joseph H. Aughtman, AUGHTMAN LAW FIRM, LLC, Montgomery, Alabama, for Appellants. David F. Abernethy, Katie B. Garayoa, DRINKER, BIDDLE & REATH, Philadelphia, Pennsylvania; Charles E. Raynal, Scott E. Bayzle, PARKER, POE, ADAMS & BERNSTEIN, LLP, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this breach of contract action arising out of a mortgage agreement, Ricardo Florez and Elizabeth Pagano ("Plaintiffs") alleged that Freedom Mortgage Corporation ("Freedom") violated the terms of their note and deed of trust by holding certain mortgage payments in an "Unapplied Funds" account ("UFA"), rather than immediately applying these payments to the note's remaining balance.[1] The district court granted Freedom's Fed. R. Civ. P. 12(b)(6) motion to dismiss, finding that Freedom fully complied with the terms of the agreement. On appeal, Plaintiffs argue that the court erroneously interpreted the agreement, overlooked one of their central arguments, and improperly concluded that their claim under the Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 (2017), necessarily depended on a showing that Freedom breached the contract. For the reasons that follow, we affirm.

"We review de novo the grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). In so doing, we must accept as true all of the factual allegations contained in the complaint." *Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir. 2019) (brackets and internal quotation marks omitted). To state a breach of contract claim under North Carolina law, a plaintiff must allege "(1) existence of a valid contract and (2) breach of the terms of the contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 827 S.E.2d 458, 472 (N.C. 2019) (brackets and internal quotation marks omitted). And to state a UDTPA violation, a plaintiff "must allege that (1) the defendants committed an unfair or deceptive act or

---

[1] Plaintiffs invoked federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2012), asserting that they represented a putative class of 100 or more members whose aggregate claims exceeded $5,000,000.

2

practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff[] or to the plaintiff['s] business." *Walker v. Sloan*, 529 S.E.2d 236, 243 (N.C. Ct. App. 2000) (citation omitted).

Although Plaintiffs' note only required them to make monthly payments, Plaintiffs opted into Freedom's biweekly payment plan, which instead contemplated 26 "Half Payments" over the course of a year. The purpose of the biweekly schedule, which resulted in two extra Half Payments every year, was to accelerate repayment of the loan. But because Freedom held the first of two Half Payments in the UFA until it received the second Half Payment, Plaintiffs argued that Freedom unjustly accrued interest on each first Half Payment for the two-week period that it remained unapplied.

Plaintiffs' claim fails under a plain reading of the deed of trust, which explicitly permitted Freedom to hold partial payments in the UFA until Plaintiffs tendered enough money to constitute a full periodic payment. As its name implies, a Half Payment was not a full periodic payment; thus, Freedom was entitled to wait until receipt of a second Half Payment before applying both to Plaintiffs' outstanding balance.

Undeterred, Plaintiffs insist that, because the biweekly payment plan restricted eligibility to borrowers who were paid ahead by one month, each of their Half Payments was a prepayment, and, under the terms of the agreement, Freedom was required to apply prepayments immediately. However, by relying on the colloquial meaning of prepayment, Plaintiffs ignore the clear, unambiguous definition supplied by the note, which placed multiple conditions on which payments constituted "Prepayments." Because the Half Payments did not satisfy each of these requirements, we agree with the district court's

3

conclusion that none of the contested payments was a Prepayment under the terms of the parties' agreement.

We also agree with the district court that the 13th and 26th Half Payments were Prepayments, but, as the district court stated, were directly applied to principal without delay.

Finally, Plaintiffs fault the district court for implying that the UDTPA claim required them to demonstrate that Freedom breached the loan agreement. Indeed, contractual breach is not an element of a UDTPA claim. *See Walker*, 529 S.E.2d at 243. Nevertheless, dismissal was appropriate, given that Plaintiffs premise their claim on their meritless contention that Freedom acted inappropriately by using the UFA. Because we discern no basis for concluding that Freedom's actions were unfair or deceptive, we reject this argument.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*